# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00229-MR

| | |
|---|---|
| TIMOTHY D. KING-EL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| FNU WILSON, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on the parties' Motions for Summary Judgment. [Docs. 33, 40].

## I. PROCEDURAL BACKGROUND

On August 18, 2020, Plaintiff Timothy King-El ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina. [Doc. 1]. Plaintiff's unverified Complaint, in which he named, in their individual and official capacities, Sergeant FNU Wilson,[1] Assistant Unit Manager Saint T. Tapp, and Unit Manager Jeffrey E. James, all employees of Marion, survived initial review on Plaintiff's First

---

[1] Defendant FNU Wilson's true full name is Matthew W. Wilson. [Doc. 48-2]. The Court will instruct the Clerk to update the docket in this matter accordingly.

Amendment claim against Defendants Wilson and Tapp. [Id., Doc. 11]. Plaintiff's other claims, including claims under the Eighth and Fourteenth Amendments and for injunctive relief, and Defendant James were dismissed. [Doc. 11 at 8-9].

Plaintiff alleges that, on February 5 and 8, 2019, Defendants Wilson and Tapp denied Plaintiff the opportunity to go through his personal property and select 10 books on Hinduism, Plaintiff's declared religion. [Doc. 1 at 7]. Plaintiff submitted grievance records with his Complaint that reflect that he moved several times between E- and F-Units at Marion in late 2018 and early 2019 and that Plaintiff's personal property inventories reflected that Plaintiff exceeded the number of books he could possess in his cell. [See Doc. 1-1 at 3]. For injuries, Plaintiff claims he was denied the opportunity to go through his personal property and suffered "a lot of stress about his personal property."[2] [Id. at 5, 7].

On August 12, 2021, Defendants moved for summary judgment. [Doc. 33]. Defendants argue that summary judgment should be granted because

---

[2] On December 14, 2020, Plaintiff filed an untimely appeal from this Court's initial review Order. [Doc. 16]. On March 23, 2021, the Fourth Circuit dismissed Plaintiff's appeal, holding that the portion of the Order dismissing Plaintiff's Eighth and Fourteenth Amendment claims was an unappealable interlocutory order and that it lacked jurisdiction over the portion of the Order dismissing Plaintiff's claim for injunctive relief because the notice of appeal was not timely filed. King-El v. Wilson, 840 Fed. App'x 751 (4th Cir. 2021).

2

Defendants did not violate Plaintiff's First Amendment rights and because qualified immunity bars Plaintiff's claims against Defendants. [Doc. 34]. In support of their summary judgment motion, Defendants submitted a brief, their own affidavits, various prison policies, an inventory of Plaintiff's property, and Plaintiff's Offender Population Unified System ("OPUS") summary. [Docs. 34, 35, 35-1 through 35-5, 48-1, 48-2; see Doc. 46].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 36]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be

3

Case 1:20-cv-00229-MR   Document 49   Filed 02/07/22   Page 3 of 14

> submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff did not file a response. [See Docs. 37, 38]. He did, however, file his own motion for summary judgment.[3] [Doc. 40]. In his motion, Plaintiff primarily restates the allegations of his Complaint. [See Doc. 40-1 at 2-3, Doc. 40-2 at 2]. Plaintiff also attaches various letters that he wrote to prison officials requesting assistance regarding his property. [See id. at 4-20]. Plaintiff, however, has submitted nothing in the form of an affidavit or under penalty of perjury. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

---

[3] More than a month after filing his summary judgment motion, Plaintiff filed another notice of appeal, but failed to identify what order he sought to appeal. [Doc. 42]. The Fourth Circuit recently dismissed this appeal for lack of jurisdiction. [Doc. 47].

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

5

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

### III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

At the relevant times, Defendants Wilson and Tapp were employed as a Sergeant and a Unit Manager at Marion, respectively. [Doc. 48-2 at ¶ 3: Wilson Aff.; Doc. 48-1 at ¶ 3: Tapp Aff.]. Plaintiff was assigned to the F-Unit

6

as part of the Rehabilitative Diversion Unit (RDU) at Marion. [Doc. 48-2 at ¶¶ 8-9]. The RDU is a non-voluntary assignment. [Doc. 48-1 at ¶ 14]. Only inmates with Restrictive Housing for Control Purposes (RHCP) status are eligible for the RDU. RHCP requires isolation of inmates who pose an imminent threat of safety to staff or other inmates or who otherwise pose a serious threat to the security and operational integrity of the prison. [Id. at ¶¶ 17-18]. The RDU was established to enhance public safety by providing a secure, sanitary, and safe environment for the housing of incarcerated individuals participating in an established curriculum of evidence-based, cognitive behavior interventions. [Id. at ¶ 15; Doc. 35-1 at 5]. The RDU emphasizes individual and group activities focused on reducing criminogenic risks and recidivism. [Id. at ¶ 16; Doc. 35-1 at 5]. Inmates in the RDU begin in Phase I and progress to Phase III through successful completion of each phase. [Doc. 48-1 at ¶ 19].

Inmates are granted certain clothing and property allowances depending on their designated phase according to NCDPS protocol. [Doc. 48-1 at ¶ 20]. While regular population inmates are allowed a combined total of 20 books or magazines, inmates in RDU Phase II, like Plaintiff, are allowed up to five (5) magazines or softcover books and one holy book for their designated religious system. [Id. at ¶¶ 22, 29; Doc. 35-3 at 3; Doc. 35-1 at

7

Case 1:20-cv-00229-MR Document 49 Filed 02/07/22 Page 7 of 14

37]. There are no exceptions to this policy based on the content of the materials, including for religious materials, but the five (5) magazines or books can consist of holy or religious books if the inmate so chooses. [Id. at ¶¶ 23-25].

The primary purpose of this policy is to create a graduated system within the RDU by which inmates are encouraged and rewarded for proper behavior and to incentivize and motivate inmates to progress through the phases. [Id. at ¶ 21]. Limitations on books and magazines are also necessary for security purposes. Excessive paper products in a cell can cause clutter, provide hiding places for weapons and contraband, and provide means to clog toilets and start fires. [Id. at ¶¶ 26-27].

On or around January 30, 2019, Defendant Wilson was assigned to F-Unit. [Doc. 48-2 at ¶ 8]. At this time, Plaintiff was designated as an adherent to the Hindu faith.[4] [Doc. 48-1 at ¶ 28]. Defendant Wilson was informed that Plaintiff had more than the allowed amount of property in his cell for his Phase II status. [Doc. 48-2 at ¶ 8]. Plaintiff's disallowed property, which included approximately 33 books but not the Bhagavad Gita, was placed in

---

[4] Plaintiff asserts that his faith is Hindu. [Doc. 1-1 at 2]. The Bhagavad Gita is the designated holy book of the Hindu faith. [Doc. 48-1 at ¶ 28; Doc. 35-3 at 1]. In his grievance, however, Plaintiff asserts that the religious books removed from his possession were "the Moorish Circle of Seven and any of [his] Moorish Science Temple material." [Id. at 1].

a secure office until it could be inventoried on a DC-160 form.[5]  [Id. at ¶ 10; Doc. 35-3 at 4-5].  Defendant Wilson went to Plaintiff's cell and told him that his property could be mailed home, donated, or destroyed, in accordance with prison policy.  [Doc. 48-2 at ¶ 11].  Plaintiff refused all these options.  [Id. at ¶ 12].  Defendant Tapp, the Unit Manager, was told that Plaintiff was being uncooperative with staff, refusing to talk or to sign any paperwork related to his disallowed property.  [Doc. 48-1 at ¶ 9].  The disallowed property was then placed in a contraband locker and Plaintiff was cited for nuisance contraband and disobeying a direct order.  [Doc. 48-2 at ¶ 14; Doc. 48-1 at ¶ 13].  He was found guilty of both offenses.  [Doc. 48-2 at ¶ 15].

## IV.    DISCUSSION

### A.    Sovereign Immunity

Because Plaintiff names Defendants in their individual and official capacities, the Court addresses the issue of sovereign immunity.  McRay v. Maryland Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte.*") (citation omitted).

---

[5] Thus, Plaintiff had well more books in his cell than he would have been allowed even as a regular population inmate.

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claims.

## B. First Amendment

The Free Exercise Clause of the First Amendment states that "Congress shall make no law … prohibiting the free exercise [of religion]." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). "A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425 (1981)).

A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the

following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

The Defendants do not dispute that Plaintiff's religious belief in Hinduism is sincerely held. Beyond that, however, there is no forecast of evidence that Plaintiff's exercise of his belief in Hinduism was substantially burdened by Defendants' alleged conduct. That is, there is no forecast of evidence that Plaintiff was forced to modify his behavior or to violate his beliefs by the limitation on the number of books he was allowed in his cell. See Carter, 879 F.3d at 139. Plaintiff only alleges, but has not shown by acceptable evidence here, that Defendants refused to allow Plaintiff to "go through" and "pick or choose (ten books) of [his] belief" while he was assigned to F-Unit.[6] [Doc. 1 at 6]. Moreover, there is no forecast of evidence

---

[6] It is worth nothing that, throughout his submissions in this matter, Plaintiff contends that he was allowed to have 10 books in his cell at the relevant times. The forecast of evidence plainly shows, however, that Plaintiff was only allowed five (5) books and one holy book.

12

that Plaintiff was prevented from having the five (5) books allowed by policy in his cell or that any books retained by Plaintiff were not religious in nature.

Because there is no forecast of evidence of a substantial burden on Plaintiff's exercise of his religion, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims. As such, summary judgment for Defendants would also be proper for Defendants on this ground.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 33] is **GRANTED**, Plaintiff's Motion for Summary Judgment [Doc. 40] is **DENIED**, and this action is hereby **DISMISSED with prejudice**.

The Clerk is respectfully instructed to update the docket in this matter to reflect Defendant FNU Wilson's true full name as Matthew W. Wilson.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: February 4, 2022

Martin Reidinger
Chief United States District Judge